ANA JOAQUINA EMANUELLI JIMÉNEZ, ETC., Petitioner, *v.* DISTRICT COURT OF SAN JUAN, Respondent.

No. 1064.   Argued January 27, 1936.—Decided April 6, 1936.

*H. Torres Solá* for petitioner. *R. Cuevas Zequeira* for Mr. Dávila in suits Nos. 21,860 and 21,861 in the lower court. *Harry B. Llenza* for Mrs. Llenza, widow of Emanuelli.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Ana Joaquina Emanuelli, a minor, represented by her mother with *patria potestas*, Jesusa Jiménez, requested this court to issue a writ of certiorari, seeking to have annulled two orders of the District Court of San Juan, rendered in a certain foreclosure proceeding.

The writ was issued and returned by Judge Berga of the district court who sent up the original records of case No. 21961, a proceeding brought by Antonio Dávila against Lillian Llenza, widow of Emanuelli *et al.*, to foreclose a mort-

gage, and of case No. 21860, a suit brought by Ana Joaquina Emanuelli against Antonio Dávila *et al.,* to declare the non-existence of a contract.

The parties were heard on January 27 last. Petitioner maintained the right claimed; Antonio Dávila moved that the writ of certiorari issued be discharged; and Lillian Llenza, widow of Emanuelli, filed a writing explaining her position in the matter, and the case was thus definitely submitted to the court.

Dávila maintains that the writ did not lie because an appeal had been taken from the orders complained of; because in accordance with section 175 of the Mortgage Law Regulations, certiorari is not the proper remedy to review judicial action in a summary foreclosure proceeding; because petitioner had already exercised the only remedy granted by law by bringing suit to declare the nonexistence of the contract; and because she is estopped as an heir to plead what her predecessor in interest could not have set up.

██ There is indeed an appeal taken, the dismissal of which Dávila has requested on the grounds that the orders appealed from were not appealable and the appeal constitutes a collateral attack of the summary foreclosure proceeding, contrary to the letter and spirit ⸗f the Mortgage Law. Under such circumstances, and the exⱷtence of the remedy by appeal not being, in proper cases, an unsurmountable barrier to the employment of the remedy by certiorari, in the exercise of our discretion we will entertain the proceeding. And as certiorari has been used in this jurisdiction in special cases to review actions in summary foreclosure proceedings, we will not consider the provisions of section 175 of the Mortgage Law Regulations, nor the pendency of the suit to declare the nonexistence of a contract, as unsurmountable obstacles either. Nor do we think that petitioner is estopped. We are not convinced that the question raised by her could not have been raised by her predecessor in interest.

■ Having thus decided the preliminary questions raised, we will consider the case on the merits. The suit to declare the nonexistence˙of contract—case No. 21860—involves the mortgage, the foreclosure of which is sought in case No. 21961. The initial petition in this case was filed on November 16, 1934. The service of a demand for payment on the debtor was ordered the following day. The writ demanding payment was issued on the 20th, and on the 21st of the same month of November it was served by the marshal by requesting payment personally from the minor Joaquina, from Jesusa Jiménez as mother with *patria potestas* over said minor, and from Lillian Llenza, widow of Emanuelli, individually and as administratrix of the estate.

After more than eight months had elapsed, or on August 5, 1935, the foreclosing creditor Dávila filed a motion in court stating that neither in the mortgage deed nor in the secured promissory notes, the debtors Joaquín Emanuelli and his wife Lillian Llenza had set forth the appraised value of the mortgaged property to serve as a basis for the auction in case of a foreclosure, and that as thirty days had elapsed from the time demand was made and the debt had not been paid, and as the creditor could continue with the foreclosure, it was proper for the court to summon the defendants and, after hearing all the interested parties in the suit, to fix the appraised value, in accordance with the provisions of section 127 of the Mortgage Law, as amended by Act No. 69 of May 2, 1931 (Sess. Laws, p. 432).

The court so ordered. The judicial administratrix consented, and the minor objected. Her objection was based on the allegations in the suit to declare the nonexistence of the contract, and on the following:

"FOURTH: Petitioner further alleges that, even assuming that a mortgage was validly executed, this Honorable District Court lacks authority, power, or jurisdiction to fix, or intervene in, the appraisement or assessment requested by plaintiff, because the mortgage in question was constituted after the effective date of section 127 of

the Mortgage Law, and because the latter and its Regulations only authorize the suppletory appraisement, such as is requested here, in those cases where the mortgage was recorded prior to the effective date of the Mortgage Law of 1893, which provided for the appraisement referred to in the cited section 127 of said law.

"FIFTH: Under the same hypothesis, the defendant alleges that the appraisement now sought is too late and untimely, because, in accordance with section 175 of the Mortgage Law Regulations, the judicial proceedings for the appointment of an expert must be taken at the time the demand for payment is made, and in this case such demand was made in November 1934.

"SIXTH: Defendant also alleges that the proceeding brought by plaintiff in this case, seeking to obtain an appraisement, is not authorized by the Mortgage Law nor by the Regulations for its execution, as the suppletory appraisement, according to section 175 of the Regulations, should be made by experts in the absence of an agreement."

On December 3, 1935, the court decided the question in favor of the foreclosing creditor, and ordered the parties by mutual agreement to fix the appraised value of the property to serve as a basis for the first public sale, and if they failed to do so within ten days after being notified, the court would proceed to appoint an expert at the expense of the foreclosing creditor to appraise the property and, in view of his report, to fix the basis for the first public sale.

The minor moved for a reconsideration of that decision and the court denied such motion by an order of January 3, 1936. On January 4, she appealed, and on the 9th she filed in this Supreme Court her petition for a writ of certiorari.

In our judgment, the minor is correct. The case was a special summary proceeding of which the previous assessment was made one of its essential characteristics, as said in the very report accompanying the bill which became the mortgage law, submitted to the Spanish Cortes by the Colonial Minister, Don Antonio Maura y Montaner, thus:

". . . . Previous appraisement, uniformity of judicial jurisdiction in all necessary proceedings, only one summons and the immediate sale by auction, are the basis of the new law. We have

abolished actions, letters requisitory, writs of attachment on property already mortgaged, incidental issues, simultaneous auctions, and a great many other barriers in the path of territorial credit, which had been placed there with the best of intentions, but which actually only tripped good faith.'' Mortgage Law for Cuba, Porto Rico, and the Philippines, 1893 ed.

The act amending section 127 of the Mortgage Law continues to require the previous appraisement. It is Act No. 69 of 1931 (Sess. Laws, p. 432), which reads as follows:

''Section 1.—Article 127 of the Mortgage Law in force, is hereby amended to read as follows:

'' 'The mortgage deed shall state the value at which the contracting parties appraise the estate, in order that it may serve as a basis for the first public sale which may be made, in the event that, the term of the loan having expired, the registry of the property does not show the payment of said loan.

'' 'Should the first public sale fail to produce an award or adjudication, two-thirds of the value at which the contracting parties appraise the estate shall serve as a basis for the second public sale, but when said two-thirds part do not exceed the amount of preferred liabilities, such amount shall be the minimum limit of admissible bids.

'' 'Should there be no award or adjudication at the second public sale, the basis for such other sales as may be held shall be the total amount of the preferred credits.'

''Section 2.—The provisions of the Act of March 9, 1905, relative to judgments and the satisfaction thereof, so far as they conflict with the provisions of article 127 of the Mortgage Law as amended by the preceding article, and all other laws or parts of laws in conflict herewith, are hereby repealed.''

Said act was in force at the time the mortgage in question was constituted and conclusive upon the question. As we have said, it requires that the appraisement of the mortgaged property be stated in the mortgage deed. If it does not appear, the contract will not be avoided on that account, but the creditor can not foreclose his credit by the summary proceeding provided by the Mortgage Law and supplemented by its regulations.

■ The distinction made by the court in its order of December 3, 1935, between mortgages agreed upon by the parties and those imposed by the sole act of the owner of the immovable is correct, but its conclusion that section 127 of the Mortgage Law only refers to the former does not convince us.

In support of its decision the district court cites the commentators Morell and Sancho Tello, invoked by the foreclosing creditor in the brief he filed as follows:

Citation from Morell:

"But as said mortgage is constituted by the debtor only, and neither the consent nor the intervention of the holders of the obligations is necessary nor possible, nor the transfer of the latter is to be delayed in each case with an examination and appraisement of the value of the security, the defect pointed out by Aragonés is clear: it is to be judged, whether or not the notes are negotiated in the Exchange, by the financial status of the partnership or individual who issued them, and it is not strange that the nominal value of each obligation, even though in the nature of a mortgage, be different from the real value, superior or inferior to it depending on the circumstances.

"And what shall we say with respect to the value of the immovables or rights mortgaged? In accordance with section 130, there must always appear in the mortgage deed, in order that resort may be had to the summary proceeding, the value at which the interested parties appraise the property so that it serve as a basis for the public sale. Is it possible that with the intervention of the debtor alone, the latter can fix at his will the basis for the public sale, or that he appraise the properties in the value he desires?" 4 Morell, *Legislación Hipotecaria*, 259, 262.

Citation from Sancho Tello:

"The appraisement requires the mutual agreement of creditor and debtor and hence, only by said mutual agreement can be it altered making it to appear in a public document, which must be presented to the Registry of Property for record." Sancho Tello, *Redacción de Instrumentos Públicos*, 886.

As may be seen, the commentators do not express any definite or final opinion on the question. No other authority has been cited to us, nor have we been able to find any.

The law does not make any distinction. It is true that it provides that the appraised value of the property by the parties to the contract must be made to appear, and that it is in mortgages agreed upon by the parties from the beginning that the latter may act jointly from the beginning also, but in those constituted by the owner, in order that they may be in fact effective, the existence of contracting parties is also ultimately necessary. If the owner encumbers his property to secure negotiable instruments, it is when he negotiates them that the contract takes effect and at that moment emerge the contracting parties mentioned in section 127 of the Mortgage Law. When deciding to contract, the purchaser of the instrument accepts the security as it was established by the debtor and there is a mutual agreement.

█ Starting from the premise that the law is applicable to this case, could resort be had to the provisions of section 175 of the Regulations for the Execution of the Mortgage Law? The regulations provide:

"Creditors who have their rights recorded prior to the time the law goes into effect, may elect this summary procedure; but when the titles of their claims do not state the agreement of the debtor to a definite price for the auction, they must establish this agreement by means of a public instrument, or request a valuation, in accordance with the Law of Civil Procedure, in order to prepare the announcement of the sale; the rules of this section fixing the upset price for the protection of preferred claims being understood to be always applicable. The proceedings for the appointment of an expert shall be had at the time demand for payment is made, and shall relate to the same persons on whom such demand is to be served."

As may be seen, the express terms of the law refer to a method fixed for mortgages constituted prior to the enactment of the legislative mandate regarding the inclusion of the appraisement in the deed. And here the mortgage was constituted later.

Moreover, if said method be applicable, it should have been invoked, also in accordance with its provisions, to be followed when the demand for payment was made and not later, as was done here.

And let it not be said that this is a case provided for by section 36 of the Code of Civil Procedure, for here, although the creditor by virtue of the deficiency in the document by which the mortgage was constituted can not resort to the summary foreclosure proceeding, he can exercise the ordinary action authorized by the same Code of Civil Procedure, and in view of the attendant circumstances, perhaps this is more just and equitable for all the interests involved.

The orders of December 3, 1935, and January 3, 1936, must be set aside, and the motion of the foreclosing creditor of August 5, 1935, must be denied.

Mr. Justice Travieso took no part in the decision of this case.